UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ELMEDIN TINJAK, *et al.*,

      Plaintiffs,   :

  v.

BIANCHI USA, INC., *et al.*,   :

      Defendants.

Case No. 2:22-cv-2853
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Elizabeth A. Preston Deavers**

## OPINION AND ORDER

After being injured in a bicycle crash, Elmedin Tinjak and his wife filed suit against the bike's manufacturer, Cycleurope USA, Inc. dba Bianchi USA.[1] (Compl., ECF No. 2.) The matter is now before the Court on Bianchi's Motion for Summary Judgment on the Applicability of Ohio Revised Code § 2315.18 Caps on Non-Economic Damages (Mot. Summ. J., ECF No. 36) and the Tinjaks' Motion to Exclude Defendants' Expert Witnesses Not Disclosed in Accordance with Fed. R. Civ. P 26(A) (Mot. Exclude, ECF No. 37). For the reasons below, both motions are **GRANTED**.

**I.   BACKGROUND**

Mr. Tinjak has been a life-long cyclist. (Tinjak Dep., ECF No. 35, 16:10–11.) On June 20, 2020, the carbon fiber fork of his brand-new Bianchi bicycle failed, causing him to crash face-first on the pavement. (Tinjak Aff., ECF No. 39-1, ¶¶ 3–4;

---

[1] Backcountry.com LLC was also named as a Defendant, but has since been dismissed from the action. (*See* ECF No. 25.)

*see also* Tinjak Dep., 27:19–20.) Mr. Tinjak was taken to Riverside Methodist Hospital, where he was treated for a concussion, chest contusions, a fractured vertebra, and multiple complex facial lacerations. (Tinjak Aff., ¶ 6.) In deposition, Mr. Tinjak described the pain of having gravel removed from his wounds. (Tinjak Dep., 34:6–13.) His "tongue was completely shredded." (*Id.*, 34:22–23.) His mouth and nose required complex repair, including reattachment of several nerves. (*Id.*, 36:7; *see also* Tinjak Aff., ¶ 6.) The injury and resulting stitches left scarring on his face and "pockets" of skin between his lip and jaw. (Tinjak Aff., ¶¶ 10, 12; *see also* ECF No. 39-3.)

The injuries Mr. Tinjak sustained that day continue to affect him. The scars on his face bother him—he used creams to minimize their appearance and keeps facial hair "to hide a lot of" them. (Tinjak Dep., 36:22–37:24.) The pockets in his mouth can accidentally catch food. (*Id.*, 35:17–21.) And he lost sensation in the area around his mouth, which he understands is likely permanent. (*Id.*, 36:8–9; Tinjak Aff., ¶ 18.) Mr. Tinjak's "biggest issue," though, is back pain. (Tinjak Dep., 39:20.) He struggles to do things he was once able to do, such as ski and play golf. (Tinjak Aff., ¶ 9.) He can no longer ride his bike for long periods of time, play sports with his kids for long periods of time, or stand for more than 30–45 minutes. (*Id.*)

The Tinjaks filed this action seeking damages for economic and non-economic loss suffered as a result of the crash. (Compl., ¶ 48.)

## II. MOTION FOR SUMMARY JUDGMENT

Bianchi argues that, as a matter of law, the Tinjaks' claims are subject to the damage caps in Ohio Rev. Code § 2315.18(B)(2). That statute caps "damages for

2

noneconomic loss" to the greater of $250,000 or three times the economic loss, up to $350,000 per plaintiff or $500,000 per occurrence, unless the loss results from "permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system" or "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." Ohio Rev. Code § 2315.18(B)(2)–(3). Mr. Tinjak opposes the imposition of the caps, arguing that a reasonable jury could find that his injuries constitute a permanent and substantial physical deformity. The Court disagrees.

The Ohio Revised Code does not define "permanent and substantial physical deformity." *Accord Torres v. Concrete Designs Inc.*, 134 N.E.3d 903, 925 (Ohio Ct. App., 2019). But the Ohio Supreme Court has explained that § 2315.18 limits noneconomic damages "for all but the most serious injuries[.]" *Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 432 (Ohio 2007); *see also id*. at 433 (describing the injuries excepted from the damage cap as "catastrophic"). Similarly, this Court has said that "when viewed in the context of the other language in § 2315.18(3)(a), any 'permanent and substantial physical deformity' must be 'severe and objective.'" *Sheffer v. Novartis Pharma. Corp.*, No. 3:12-cv-238, 2014 WL 10293816, at *2 (S.D. Ohio July 15, 2014) (Rice, J.) (quoting *Weldon v. Presley*, No. 1:10-cv-1077, 2011 WL 3749469 (N.D. Ohio Aug. 9, 2011)). In *Sheffer*, for example, this Court found that osteonecrosis of the jaw caused by defendant's products was not severe and objective, despite persistent imperfections and pain in the plaintiff's jaw. 2014 WL

3

10293816, at *2. Compare that with *White v. Bannerman*, where Ohio's Fifth District Court of Appeals upheld an award above the statutory cap after a car accident caused glass fragments to embed in the plaintiff's face and sever tendons in her hands, resulting in severe scarring and limited mobility. Nos. 2009CA00221, 20090CA00245 and 2009CA00268, 2010 WL 3852354 (Ohio Ct. App. Sept. 27, 2010).

On the evidence provided, no reasonable jury could conclude that Mr. Tinjak's injuries rise to the level of a permanent and substantial physical deformity. The scars on Mr. Tinjak's face are visible. But, based on the photos provided, they are not substantial—especially when "[c]ommon experience readily teaches that many people have some type of scar, from childhood roughhousing or surgery." *Weldon*, 2011 WL 3749469, at *6. And although there is evidence that food can lodge into the pockets left by intraoral scarring, and that Mr. Tinjak lost sensation in an area around his mouth, there is no indication that these effects are catastrophic.

Mr. Tinjak urges the Court to reserve this issue for a jury, but "courts have not hesitated to decide the issue before trial" when, as here, "it is clear that the statutory exceptions are inapplicable[.]" Sheffer, 2014 WL 10293816, at *2 (further citation omitted).

Bianchi's Motion is **GRANTED**. Mr. Tinjak's recovery for noneconomic losses is subject to the damages caps in Ohio Rev. Code § 2315.18.

### III. MOTION TO EXCLUDE UNDISCLOSED EXPERT

The Tinjaks seek to exclude Greg Dubois as an expert witness for failure to comply with the expert disclosure requirements. (Mot. Exclude.) The Court

4

established a March 31, 2023 deadline for expert disclosures. (Preliminary Pretrial Order, ECF No. 12.)

Expert disclosures go beyond just the expert's identity; a party must also disclose the expert's written report. Fed. R. Civ. P. 25(a)(2)(A)–(B). When a party fails to comply with Rule 26(a)'s expert disclosure requirements, Rule 37(c) precludes the noncompliant party from using the "information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sanction is "self-executing." Fed. R. Civ. P. 37(c) advisory committee's note to 1993 Amendment. The party seeking to avoid the Rule 37(c) sanction—here, Bianchi—bears the burden of showing that its failure to comply with the expert disclosure requirements was harmless or substantially justified. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). Courts within the Sixth Circuit consider five factors to determine whether a party's noncompliant disclosure was harmless or substantially justified:

(1) Surprise to the party against whom the evidence would be offered;
(2) Ability of that party to cure the surprise;
(3) Extent to which allowing the evidence would disrupt the trial;
(4) Importance of the evidence; and
(5) Non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

Bianchi does not address any of the *Howe* factors; instead, it stresses that the Tinjaks knew Mr. Dubois had been retained as an expert as early as August 2020. (ECF No. 38, PAGEID # 318.) Although Bianchi asserts that its counsel "was of the

5

impression that [Mr. Dubois's December 18, 2020 report] had been supplied to Plaintiff counsel prior to [his] involvement in the litigation," it offers no facts that would justify counsel's mistaken impression. (ECF No. 38, PAGEID # 318.)

The Court's own consideration of the five factors leads it to conclude that Bianchi's noncompliance with the expert disclosure requirements of Rule 26(a) and the Court's Preliminary Pretrial Order was neither harmless nor substantially justified. First, the Tinjaks were surprised by the substance of Mr. Dubois's opinions, even if they were not surprised by his identity. Second, because the opinions were disclosed after the discovery period closed, the Tinjaks were unable to cure the surprise. Third, allowing Mr. Dubois's opinions would fairly require the Court to re-open discovery in this years-old case. Fourth, although the underlying facts are such that expert testimony would likely be very important, Bianchi offers the Court no insight into the substance of Mr. Dubois's primary[2] opinions. The Court thus cannot conclude that his opinions are material to the case. And finally, Bianchi's earlier-discussed explanation for its failure to comply is grossly insufficient.

The Tinjaks' Motion is **GRANTED**. Mr. Dubois is **EXCLUDED** as an expert.

---

[2] Bianchi's response in opposition to the motion includes an untitled, unattributed excerpt of another document. (*See* ECF No. 38, PAGEID # 321.) The Court infers from context that the excerpt is Mr. Dubois's rebuttal opinion.

6

## IV. CONCLUSION

For the reasons above, Bianchi's Motion for Summary Judgment (ECF No. 36) is **GRANTED**. The Tinjaks' recovery for noneconomic losses is **CAPPED** by Ohio Revised Code § 2315.18(B)(2).

The Tinjaks' Motion to Exclude is also **GRANTED**. Mr. Dubois is **EXCLUDED** as an expert.

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**CHIEF UNITED STATES DISTRICT JUDGE**